**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JACQUELINE RODRIGUEZ,

     Plaintiff,

v.

NATURAL GROCERS BY VITAMIN COTTAGE, INC. d/b/a NATURAL GROCERS,

     Defendant

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Jacqueline Rodriguez ("Rodriguez" or "Plaintiff") files this Complaint and Jury Demand against Defendant, Natural Grocers by Vitamin Cottage, Inc. d/b/a Natural Grocers ("Natural Grocers" or "Defendant"), seeking all available relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

### **NATURE OF THE ACTION**

1.     Plaintiff brings this action on behalf of herself as a result of Defendant's unlawful sexual harassment and retaliation, culminating in her wrongful termination on September 19, 2025. Plaintiff seeks damages, injunctive relief, and other appropriate remedies for Defendant's violation of Title VII.

## THE PARTIES

### *Plaintiff Jacqueline Rodriguez*

2.      Plaintiff Jacqueline Rodriguez is an adult individual who is a resident of St. George, Utah.

3.      Rodriguez was employed by Defendant in various hourly-paid positions—most recently as a Grocery/Bulk Assistant Manager—in a store located in St. George, Utah, from approximately 2022 until September 19, 2025.

4.      Throughout her employment Rodriguez performed primarily manual labor, such as stocking shelves, working the cash register, and cleaning the store. She was not responsible for overseeing the store or its employees.

5.      During her employment with Natural Grocers Rodriguez was supervised by several Assistant Store Managers and Store Managers, including the 2nd Assistant Store Manager Zachary Macki (a male).[1]

6.      Rodriguez is a covered employee within the meaning of Title VII.

### *Defendant Natural Grocers*

7.      Defendant Natural Grocers is a Colorado corporation that is headquartered in Lakewood, Colorado.

8.      Natural Grocers owns and operates nearly 170 grocery stores in twenty-one (21) states, mainly throughout the Central and Western United States, including in this District.[2]

9.      Natural Grocers employs more than 3,450 full-time people across the United States including, upon information and belief, hundreds of employees in its retail stores, including in this

---

[1] Upon information and belief, Plaintiff believes this is spelling of the name of the individual in question.

[2] *https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=319639757&type=HTML&symbol=NGVC&cdn=156278fa0b4529300d43c9fa01b1d877&companyName=Natural+Grocers+by+Vitamin+Cottage+Inc.&formType=10-K&dateFiled=2025-12-11*, at 2 (last accessed on March 3, 2026).

District.[3]

10. Throughout the relevant period, Defendant has employed more than 500 employees—including Plaintiff and Zachary Macki—and has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U. §§ 200e(b), (g), and (h).

11. At all relevant times, Natural Grocers maintained strict control, oversight, and direction over its employees, including with respect to store operations and timekeeping, payroll, and other employment practices that applied to them.

## JURISDICTION

12. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, and 42 U.S.C. §§ 1981a and 2000e.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. This Court has personal jurisdiction over Natural Grocers because it does business in Colorado and in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Natural Grocers resides in this District and, upon information and belief, the employment conditions and practices alleged to be unlawful were promulgated and/or approved by individuals within this District.

16. The amount in controversy exceeds $75,000.00.

## ADMINISTRATIVE PROCEDURES

17. On January 6, 2026, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A. On February 4, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, authorizing this action. *See* Exhibit B.

---

[3] *Id*., at 11.

18.      Plaintiff has fulfilled all conditions precedent to initiation of this lawsuit.

## GENERAL FACTUAL ALLEGATIONS

### I.      Background and Relevant History

19.      Natural Grocers is a publicly traded corporation with its headquarters located in Lakewood, Colorado. Natural Grocers is "an expanding specialty retailer of natural and organic groceries and dietary supplements" and owns and operates stores within the "natural products retail industry."[4]

20.      According to its latest Annual Report, in 2025 Natural Grocers had revenue of more than $1.3 Billion.[5]

21.      Natural Grocers maintains strict control, oversight, and discretion over the operation of its retail stores, including its employment conditions and practices.

22.      Since at least 2019, Defendant has engaged in unlawful employment practices at its St. George, Utah store in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

23.      During that time, Zachary Macki (a male) was employed as the 2nd Assistant Store Manager at the St. George store.

24.      Plaintiff began her employment with Natural Grocers in approximately 2022 as a cashier. She worked diligently to advance her career with the company over the next nearly 4 years.

25.      Through her dedication and exceptional performance, Plaintiff was promoted at least twice and, upon being terminated by Natural Grocers, had attained the position of Grocery/Bulk Assistant Manager.

---

[4] *Id.*, at 1-2.
[5] *Id.*, at 60.

26.    Throughout her entire employment, Plaintiff consistently received positive performance reviews and was a well-liked and capable member of the St. George store.

## II.    Systemic Sexual Harassment

27.    Upon information and belief, in his capacity as a 2nd Assistant Manager at the St. George store, whether acting alone or in concert with other store personnel, Macki possessed the authority to hire, fire, promote, demote, take disciplinary action, authorize shift changes, make work assignments, and take other tangible employment actions concerning employees at the St. George store.

28.    Macki was undoubtedly aware of the power and influence he and the managers above him possessed as it related to control over the employees and operations of the St. George store.

29.    Beginning in 2022 when Plaintiff commenced employment with Natural Grocers, Macki—on a near weekly basis—created a hostile work environment for Plaintiff and several of the store's other female employees.[6]

30.    The harassment was severe and pervasive and was not condoned or approved by Plaintiff and the store's other female employees.

31.    The harassment was sexual in nature and was directed to individuals of the opposite sex (females).

32.    The harassment involved improper touching and inappropriate physical conduct and verbal statements by Macki. On at least one occasion, Macki showed Plaintiff a sexually explicit video clip that depicted a woman's genitals.

---

[6] Contemporaneously with this action, two additional women are filing suit in this District against Natural Grocers.

33.     The harassment also involved Macki holding hands and "locking pinkies" with Plaintiff, hugging Plaintiff and lifting her over his shoulder, and making inappropriate comments of a sexual nature, such as:

- "How close do I need to get before you get uncomfortable?"

- Sharing details about a surgical procedure on his genitals;

- Stating that his wife desires an open relationship; and

- Referring to Plaintiff as his "work wife."

34.     A reasonable person would deem Macki's conduct to rise to the level of sexual harassment.

35.     Following years of unwanted sexual harassment, on August 30, 2025, Plaintiff provided a formal written complaint of sexual harassment to the Assistant Store Manager at the St. George store who, in turn, provided it to Ray Solano, one of Natural Grocers' Human Resources Business Partners.

### III.    Natural Grocers Was Aware of the Sexual Harassment

36.     Natural Grocers was aware—at the store- and above-the-store-level—that Macki was sexually harassing female employees at the St. George store.

37.     An internal investigation conducted by Natural Grocers concluded that at least two upper store-level managers and one regional-level manager were aware of the sexual harassment.

38.     For example, Natural Grocers concluded that an Assistant Store Manager at the St. George store "had prior knowledge of inappropriate physical contact occurring between [Macki] and the [store's] crew" including "witnessing the [Macki] hugging crew …" but "dismissed the behavior …" The Assistant Store Manager was similarly subjected to Macki's unwarranted advances and reported to Natural Grocers that she, too, felt "uncomfortable."

39.     Natural Grocers also concluded that the Store Manager at the St. George store "had prior knowledge of inappropriate physical contact occurring between [Macki] and crew" but similarly "dismissed the behavior …"

40.     Natural Grocers further concluded that an above-the-store-level manager (referred to by Natural Grocers as a "Regional Manager") was also aware that Macki "was invading crew's personal space and requesting hugs" but "was dismissive" despite believing Macki's conduct was a "red flag."

41.     The sexual harassment is indisputable—Natural Grocers has graphically described it in several termination notices given to some of its store-level and above-the-store-level employees (in which the above—and below—statements appear).

## IV.     Natural Grocers' Inadequate Response

42.     Rather than exercise reasonable care to prevent and properly address the sexual harassment at the St. George store, Natural Grocers did two things after Plaintiff formally reported her concerns: (1) it conducted a sham after-the-fact investigation, including of Plaintiff, to attempt to limit the risks of litigation arising out of Macki's severe and pervasive sexual harassment of female employees; and (2) it blamed the victims and other store employees for Macki's sexual harassment and retaliated against many of them by terminating their employment.

43.     *First*, Natural Grocers terminated the St. George store's Assistant Store Manager (terminated September 16, 2025) and Store Manager (terminated September 15, 2025), as well as the Regional Manager responsible for overseeing the store's operations (terminated September 14, 2025) for, according to Natural Grocers, failing to "escalate" the harassment to the company's Human Resources "in violation of company policy."

44.     In so doing, Natural Grocers attempted to distance itself from any potential liability for Macki's sexual harassment, even though it created the environment for the harassment (through its policies, procedures, and company operations) and failed to take more appropriate and reasonably necessary steps to avoid the harassment in the first place (such as providing adequate sexual harassment training to employees, including managers, and better safeguards to prevent the harassment).

45.     *Second*, Natural Grocers sent Human Resources and other personnel to the St. George store to question employees and obtain statements and information from them regarding Macki's sexual harassment. Upon information and belief, however, the investigation was used by Natural Grocers to find reasons to blame its employees for Macki's conduct, including Plaintiff and the other victims of Macki's harassment, rather than evaluate its policies, procedures, and company operations to ensure that other female employees were not sexually harassed.

46.     For example, between September 4-10, 2025, Natural Grocers' Human Resources Director Priscilla Cardenas visited the St. George store. During the visit, Ms. Cardenas "completed a check-in, speaking to the crew in the store to address concerns, issues, and to answer any questions the crew may have had about company policy." However, upon information and belief, the purpose of the visit was to find reasons to punish and ultimately retaliate against Plaintiff and other store employees.

47.     Among other things, Natural Grocers claimed that Plaintiff engaged in unprofessional behavior on the sales floor and had received a customer complaint. Natural Grocers further claimed that surveillance footage taken from the store's surveillance cameras indicated that Plaintiff and two other employees were "congregated in the receiving area and did not engage in any work-related tasks for a duration of nine minutes and fifteen seconds" resulting "in theft of company time."

48.    Natural Grocers' investigation was seriously flawed and deliberately omitted key details and took Plaintiff's statements out-of-context.

49.    Nevertheless, on September 19, 2025—a mere three weeks after reporting Macki's sexual harassment—Natural Grocers retaliated against Plaintiff for having done so by terminating her employment.[7]

50.    Plaintiff had not been previously disciplined by Natural Grocers for any of the alleged acts it asserts she committed. To the contrary, Plaintiff had an exemplary employment history at Natural Grocers.

51.    Natural Grocers also retaliated against other employees, including at least two other victims of Macki's harassment, and similarly fired them for trivial reasons for which they had not been previously disciplined and which were unrelated to Macki's harassment.

**V.    Natural Grocers' Inadequate Harassment Training**

52.    Upon information and belief, Natural Grocers provides inadequate training to store-level and above-the-store-level managers regarding the prevention and reporting of sexual harassment.

53.    For example, the Assistant Store Manager at the St. George store indicated to Natural Grocers that she did not report Macki's harassment "because she was uncomfortable but not extremely uncomfortable" when Macki hugged her in the past and tried to hold her hand. The Assistant Manager also indicated that she did not report other concerns regarding Macki because she considered it to be "crew sharing and not making a formal complaint."

---

[7] Prior to her termination, one of Defendant's senior operations managers, Brian Phillips, visited the store and indicated to Plaintiff that she would not be terminated because of the company's investigation. Ultimately, that statement was untrue.

54.     The Store Manager at the St. George store was similarly unsure as to what conduct constituted sexual harassment because, Natural Grocers concluded, he "dismissed the behavior" stating that "[i]t was just hugging" and he believed the interactions occurred because staff were "upset over a personal matter."

55.     The Regional Manager with responsibility for supervising the operations at the St. George store similarly indicated to Natural Grocers that while he did consider Macki's actions to be a "red flag" he was "looking for patterns and trying to see if you know there was something there." He admitted that "I haven't witnessed anything like this" but was nevertheless "putting together a report … and was focused on working on it."

56.     The Regional Manager was aware—days before Plaintiff submitted a written complaint to Human Resources—that "Zach was invading crew's personal space and requesting hugs. However, [he] did not follow up on this concern."

57.     Demonstrating the woefully inadequate training and reporting processes regarding sexual harassment in its stores, the Regional Manager had also been previously reprimanded by Natural Grocers in connection with another, unrelated report of harassment, in which the company's senior corporate-level operations managers "had previously spoken to [him] about reporting high risk situations to human resources which include issues such as discrimination and harassment."

58.     Natural Grocers' managers were ill-equipped to identify, respond, and report sexual harassment in its stores. Natural Grocers is aware of this—its senior Director of Operations, Andi Valdez—previously spoke with the Regional Manager about reports of harassment in its retail stores but, upon information and belief, offered no additional training or additional resources to (1) prevent harassment in Natural Grocers' stores; and (2) ensure that all instances of sexual harassment were being promptly—and properly—reported and investigated.

59.     Upon information and belief, the extent of Natural Grocers sexual harassment training for store-level and above-the-store-level managers includes limited on-line modules and in-person information sessions—squeezed amongst other mandatory trainings—when employees complete the company's one-off training program for managers in its corporate office in Colorado.

60.     As evidenced by the Natural Grocers investigation, managers have limited to no understanding of issues surrounding sexual harassment in Natural Grocers' stores.

61.     In addition, had Plaintiff and her colleagues been properly trained on issues concerning sexual harassment—and Natural Grocers had adequate policies, procedures and operations in place—Plaintiff and her colleagues would not have endured years of sexual harassment. Nevertheless, Natural Grocers' systematic failures created the circumstances that both gave rise to Macki's harassment and ensured that it continued unabated for years.

**<u>FIRST CAUSE OF ACTION</u>**
**Sexual Harassment**
**Title VII, 42 U.S.C. § 2000e *et seq*.**

62.     Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

63.     Plaintiff is an "employee" as that term is defined in 42 U.S.C. § 2000e(f).

64.     Defendant is an "employer" as that term is defined in 42 U.S.C. § 2000e(b).

65.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* prohibits discrimination based on protected classifications such as sex.

66.     Based on the above-described acts, practices, and omissions, Defendant engaged in unlawful sexual harassment under Title VII based on Plaintiff's sex (female).

67.     Defendant is liable for hostile work environment/sexual harassment based upon sex as the sexual harassment Plaintiff endured was unwelcome, offensive, and sexual in nature. The harassment by Macki included unwanted sexual advances, inappropriate physical touching and

11

holding, showing explicit sexual material, and creation of a sexually hostile work environment that affected Plaintiff's ability to perform her job duties.

68.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment by creating an abusive working environment, particularly given that Plaintiff was subjected to Macki's harassment for several years.

69.    Defendant knew or should have known about the harassment to which Plaintiff was subjected, but failed to provide adequate reporting mechanisms, training to employees, and policies, procedures, and operations to detect and prevent the harassment.

70.    When Plaintiff engaged in protected activity by sharing her concerns regarding sexual harassment with her managers and Human Resources employees, it was mischaracterized and she was terminated in retaliation by Natural Grocers.

71.    Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile or abusive.

72.    As a direct result of Defendant's conduct, Plaintiff has suffered and continues to suffer compensatory pecuniary and non-pecuniary damages, including but not limited to front pay, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, embarrassment, professional disparagement, and other non-pecuniary losses. Plaintiff is also entitled to and may seek her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### SECOND CAUSE OF ACTION
**Retaliation**
**Title VII, 42 U.S.C. § 2000e *et seq*.**

73.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

74.    Title VII, 42 U.S.C. § 2000e-3(a), states in relevant part that "it shall be unlawful employment practice for an employer … to discriminate against any individual … because [s]he

12

has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."

75.    Plaintiff engaged in activity protected by Title VII when she reported the sexual harassment by Macki to Natural Grocers and then subsequently when she participated in the company's investigation.

76.    Plaintiff's opposition, complaints, and discussion regarding Defendant's illegal harassment practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq.*

77.    Defendant unlawfully retaliated against Plaintiff because she engaged in the above-described statutorily protected activities. Defendant's retaliatory conduct included an inadequate investigation of the sexual harassment to which she was subjected, conducting a biased investigation that deliberately misrepresented her statements and sought information that would be used against Plaintiff, and ultimately terminating her employment on September 19, 2025.

78.    A causal connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation, as evidenced by the timeline of events and Defendant's failure to provide legitimate non-retaliatory reasons for its adverse employment actions.

79.    Defendant acted intentionally, with malice and/or reckless indifference to Plaintiff's rights.

80.    As a direct result of Defendant's conduct, Plaintiff has suffered and continues to suffer compensatory pecuniary and non-pecuniary damages, including but not limited to front pay, emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, embarrassment, professional disparagement, and other non-pecuniary losses. Plaintiff is also entitled to and may seek her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

1. Compensatory damages, including but not limited to those for emotional distress, pain and suffering, mental anguish, loss of enjoyment of life, embarrassment, professional disparagement, and other non-pecuniary losses;

2. Front pay;

3. Lost benefits, including health insurance, retirement contributions, and other employment benefits;

4. Punitive damages;

5. Injunctive relief requiring Defendant to implement and maintain policies and procedures to prevent sexual harassment and retaliation;

6. Attorney's fees and costs of this action as permitted by law;

7. Pre-judgment and post-judgment interest; and

8. Such further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Collective Action Complaint and Jury Demand.

Dated: March 3, 2026

*s/Jason Conway*
Jason Conway
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Daniel Levin, Esq.*
Zanetta Moore-Driggers, Esq.*
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

14

Telephone: (215) 592-1500
dlevin@lfsblaw.com
zmooredriggers@lfsblaw.com

**_Attorneys for Plaintiff_**

_* To be admitted pro hac vice_